UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BRIAN CONGELOSI,

                              Petitioner,

         -vs-                                         No. 02-CV-6014(CJS)(VEB)
                                                      **REPORT AND RECOMMENDATION**

DAVID MILLER,

                              Respondent.

## I.    Introduction

Petitioner Brian Congelosi ("Congelosi" or "petitioner") has filed a *pro se* petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his

conviction on November 4, 1996, on charges of murder, assault, felony driving while intoxicated

("DWI"). This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for the

issuance of a report and recommendation regarding the disposition of Congelosi's petition. For

the reasons that follow, I recommend that the petition be denied.

## II.   Factual Background and Procedural History

### A.    Overview

The conviction here at issue stems from a fatal two-car crash that occurred on the

evening of March 4, 1996, on Maplewood Avenue in the City of Rochester involving a pick-up

truck driven by Congelosi and a small vehicle carrying five passengers: nineteen-year-old Carrie

Ann O'Meara ("Carrie Ann"); her mother, Kathleen O'Meara ("Mrs. O'Meara"); and three

siblings, Brandon Miller ("Brandon"), Dale Miller ("Dale"), and Nicole Miller ("Nicole").

Carrie Ann and Brandon died, and Mrs. O'Meara and Dale both suffered serious and life-

threatening injuries. Only the youngest child, Nicole, escaped with relatively minor injuries. At the time of the accident, Congelosi was heavily intoxicated, having a blood-alcohol content well more than twice the legal limit. He was arrested that night and subsequently indicted by a Monroe County grand jury on two counts of second degree (depraved indifference) murder, two counts of first degree assault, one count of third degree assault, two counts of felony DWI, and one count of first degree aggravated unlicensed operation of a motor vehicle.[1]

### B.    Petitioner's Jury Trial

At Congelosi's jury trial in Monroe County Court (Egan, J.), the prosecution presented evidence that Congelosi's driver's license previously had been revoked following a DWI conviction and had been required to attend a program addressing the risks of drinking and driving. On the evening of the accident, between 6:00 and 6:30 p.m., Congelosi was seen driving his vehicle (a full-size pick-up truck) on Maplewood Avenue in an extremely erratic manner. *See* T.7-9, 441-43, 465-69, 489-92, 513-17, 538, 552, 655-68, 681, 696, 731-32.[2]  One motorist observed Congelosi holding what appeared to be a glass object in his hand as he drove, and a near-empty liquor bottle was later found in Congelosi's truck. *See* T.452, 459-60, 568. 585. It was estimated that Congelosi was driving about 50 to 55 m.p.h. although the speed limit was no more than 35 m.p.h. in the area. Congelosi sideswiped several cars and repeatedly swerved into lanes containing oncoming traffic, forcing the other drivers to take emergency actions in order to avoid being hit. *See* T.408, 444-46, 449, 468-75, 492-96, 517-18, 563-64, 710-14.

Congelosi continued to drive his vehicle in this manner for nearly three miles before he

---

[1]    Counts eight and ten of the indictment were severed prior to trial on August 28, 1996, because they pertained to a separate incident.

[2]    Citations to "T.__" refer to the transcript of petitioner's trial.

drove almost head-on into the small vehicle occupied by the O'Meara family. Carrie Ann was driving, with Mrs. O'Meara in the passenger seat; the younger siblings were all in the back seat. The force of the impact essentially demolished the front-ends of both vehicles. *See* T.405, 410-16, 421-23, 433-35, 475, 496-97, 503-06, 519-21, 524-25, 564, 693-95, 715.

Carrie Ann retained consciousness momentarily and then died in the car. Brandon suffered severe head wounds and internal injuries; he survived for three days in the hospital. *See* T.426, 430-32. Dale sustained serious internal injuries as well, necessitating a colostomy which fortunately was able to be reversed at a later time. Mrs. O'Meara broke her back, collarbone, and wrist. *See* T.427-33, 437-38. Nicole's injuries, fortunately, were minor in comparison. *See* T.429-30.

Congelosi was uninjured. His blood alcohol content ("B.A.C.") at the time of the accident was between 0.28 and 0.29; the level at which a person is considered to be intoxicated under the Vehicle and Traffic Law ("V.T.L.") was 0.10 at the time of the incident. *See People v. Paris*, 159 A.D.2d 733, 553 N.Y.S.2d 444, 445 (App. Div. 2d Dept. 1990).

The jury returned a verdict convicting Congelosi as charged. He was sentenced to concurrent terms of imprisonment, the longest of which was sixteen years to life with respect to the depraved indifference murder convictions. Congelosi then entered a guilty plea to counts eight and ten of the original indictment, which had been severed from the counts involving the O'Meara incident prior to trial. As part of the guilty plea, he received two concurrent sentences of 1 ⅓ to 4 years, which were set to run concurrently to his sentences for his convictions following the jury trial.

### C.     Post-Trial Proceedings

Represented by new counsel on direct appeal, Congelosi asserted many of the claims that he now raises in the instant habeas petition. The Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed his conviction on November 12, 1999. The New York Court of Appeals subsequently denied leave to appeal on February 25, 2000, and then denied his motion for reconsideration of his leave application on May 26, 2000.

Proceeding *pro se*, Congelosi moved pursuant to New York's Criminal Procedure Law ("C.P.L.") §§ 440.10 and 440.20 for vacatur of the judgment. He sought relief on the basis that he had been denied the effective assistance of trial counsel and that the sentence imposed amounted to cruel and unusual punishment. The trial court denied his applications on December 20, 2001. The Appellate Division subsequently denied leave to appeal.

On April 30, 2002, Congelosi also filed an application for a writ of error *coram nobis* challenging appellate counsel's performance on several grounds, and also asserting a new error on the part of trial counsel. The Appellate Division summarily denied relief on July 3, 2002.

### D.     The Habeas Proceeding

Congelosi instituted the present habeas corpus proceeding on our about January 8, 2002. *See* Petition ("Pet."), Docket No. 1.[3] On or about August, 9, 2002, Congelosi filed a motion to amend along with a proposed amended petition. *See* Docket Nos. 14 & 15. The Court (Siragusa, D.J.) granted Congelosi's motion to file an amended petition on August 19, 2002. *See* Docket No. 16. In his Amended Petition (Docket No. 17) filed the same day, Congelosi asserts the following grounds for habeas relief: (1) his rights were violated because he was subjected to

---

[3]     Respondent concedes that Congelosi's petition is timely filed under 28 U.S.C. § 2244(d).

custodial interrogation without *Miranda*[4] warnings; (2) the trial court erred in admitting "gruesome" photographs of the two deceased victims where they were not probative of any material issue; (3) his convictions for depraved indifference murder violated his rights to substantive due process and equal protection of the laws; (4) trial counsel failed to move to suppress the results of the blood-alcohol test under V.T.L. § 1194(2); (5) trial counsel failed to present evidence of petitioner's chronic alcoholism, including expert testimony on that subject; (6) petitioner was deprived of his right to waive his presence at the bench for juror sidebars during *voir dire*; (7) appellate counsel failed to argue that a courtroom deputy had unsupervised contact with the jury; (8) the trial court constructively amended the indictment by mis-describing an element of depraved indifference murder in its jury charge; (9) appellate counsel failed to argues issues concerning errors in the jury instructions; (10) trial counsel failed to object to erroneous jury charges and an erroneous jury verdict form; and (11) petitioner's sentence of sixteen years to life is cruel and unusual under the Eighth Amendment. *See* Amended Petition ("Amend. Pet."), Docket No. 17. Congelosi later sought and received permission to file a Supplemental Memorandum of Law ("Pet'r Supp. Mem."), Docket No. 31, elaborating on the third and eleventh grounds for relief.

Respondent filed an answer and opposing memorandum of law on October 21, 2002. *See* Docket Nos. 26 & 27. Respondent filed a response to Congelosi's supplemental memorandum of law, to which Congelosi filed a reply. Respondent contends that the third ground for relief is unexhausted because it was never presented to the state courts in Congelosi's direct appeal or in any of his other post-conviction motions for relief. Respondent also argues that it should be

---

[4]     *Miranda v. Arizona*, 384 U.S. 436 (1966).

deemed exhausted, but nevertheless subject to an unexcused procedural default. With regard to Congelosi's remaining claims, respondent contends that they do not warrant habeas relief. For the reasons that follow, I recommend finding that ground three should be deemed exhausted but procedurally barred. Furthermore, I recommend dismissing the remainder of Congelosi's claims because they lack merit, regardless of the standard of review employed.

## III.    Legal Principles Applicable to Habeas Petitions

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. *See* 28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 375-76 (2000).

Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be

unreasonable." *Id*. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Matter of Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted). "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir. 2002); *see also Yung v. Walker*, No. 01-2299, 2002 U.S. App. LEXIS 28137 (2d Cir. Aug. 1, 2003) (amended opinion) (district court's habeas decision that relied on precedent from the court of appeals is remanded for reconsideration in light of "the more general teachings" of Supreme Court decisions). The Court of Appeals for the Second Circuit has also indicated that habeas relief may be granted if a state court's decision was contrary to or an unreasonable application of "a reasonable extension" of Supreme Court jurisprudence. *Berbary v. Torres*, No. 02-2463, 2003 U.S. App. LEXIS 16167, at *25 (2d Cir. Aug. 7, 2003). Determination of factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**IV.     Analysis of the Petition**

    **A.     Ground One: Petitioner's Fifth Amendment rights under *Miranda* were violated by the admission of his statement at the accident scene that he "had a couple of beers."**

On direct appeal, Congelosi argued, as he does here, that the trial court erred in denying his motion to suppress the statement he made to a police officer at scene of the accident

indicating that he had "had a couple of beers." According to Congelosi, he was in police custody at the time, and the statement was the product of custodial interrogation. As such, Congelosi argues, *Miranda* warnings were required–but none were given.

The suppression hearing evidence indicated that Congelosi remained trapped inside his vehicle for some time after the accident, and rescue workers had to employ the "jaws of life" in order to extricate him. *See* 7/11/96 Tr. at 36; 7/23/96 Tr. at 24-25, 58. Once freed, Congelosi immediately became very combative, flailing his arms about and shouting obscenities, and he resisted the efforts of the emergency personnel to assist him and place him on a backboard. 7/11/96 Tr. at 38; 7/23/96 Tr. at 8-9, 26-27. Because they were concerned about their own safety as well as that of petitioner, the emergency personnel expressly requested that petitioner's hands be handcuffed to the stretcher.  7/11/96 Tr. at 38, 63-64; 7/23/96 Tr. at 15, 20, 27. Once in the backboard and fitted with a cervical collar, Congelosi refused to stop lifting his head up and moving it around. To prevent Congelosi from causing or aggravating any sort of head, neck, or spinal injury, Officer Fenton held Congelosi's head down with his hands, and continued to do so while they were in the ambulance. 7/11/96 Tr. at 38, 64-66; 7/23/96 Tr. at 10, 26.

Congelosi subsequently calmed down somewhat, and the police officer asked him what had happened. Congelosi did not respond to the question and instead asked for his friend, "Scott," and whether his truck was okay. 7/11/96 Tr. at 42-43, 67. The officer then remarked, "It smells like you have been drinking," whereupon Congelosi stated, "I had a couple of beers." 7/11/96 Tr. at 43. Shortly thereafter, Officer Fenton determined that Congelosi was going to be placed under arrest. During the transport to the hospital, no police officers accompanied Congelosi in the ambulance. Once at the hospital, he was placed under arrest. 7/11/96 Tr. at 44-

45, 56.

In denying the suppression motion, the trial court simply indicated that Congelosi had made statements which "were in part spontaneous and in part responses to inquiry by the officer during the investigation of the accident." However, the custody issue was not directly addressed in the trial court's order. When the issue of voluntariness arose later during trial, the trial judge indicated that he was of the view that he had in fact determined that petitioner was not in custody when he made the statement in issue. *See* T.738. Congelosi re-asserted his *Miranda* claim on direct appeal, where the Appellate Division agreed that the trial court had properly denied Congelosi's motion to suppress the statement, "I had a couple of beers." The Appellate Division's holding on this issue reads in its entirety as follows:

> Although defendant was handcuffed to a stretcher, he was restrained at the request of medical personnel, and the statement was made in response to a police officer's remark, "[I]t smells like you have been drinking[.]"

*People v. Congelosi*, 266 A.D.2d 930, 698 N.Y.S.2d 810, 811 (App. Div. 4th Dept. 1999) (internal citations omitted).  Congelosi's *Miranda* claim clearly was adjudicated on the merits by the Appellate Division, and review in federal court thus proceeds under the AEDPA deferential standard.

A person questioned by law enforcement officers after being "taken into custody or otherwise deprived of his freedom of action in any significant way" must be "warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444. *Accord Dickerson v. United States*, 530 U.S. 428, 444 (2000) (declining to overrule *Miranda*). "Custodial interrogation " is "questioning initiated by law enforcement officers after a

person has been taken into custody or otherwise deprived of his freedom of action in any

significant way." *Id.*; *see also Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (*per curiam*)

(holding that the obligation to give *Miranda* warnings is triggered "only where there has been

such a restriction on a person's freedom as to render him 'in custody'"). It is clear that the

concept of custodial interrogation extends beyond the confines of the police station. *See Mathis*

*v. United States*, 391 U.S. 1 (1968) (holding that a prison inmate serving a state sentence was "in

custody" for the purpose of questioning by a federal tax agent); *Orozco v. Texas*, 394 U.S. 324

(1969) (finding that a person who was interrogated while on his own bed, at home, in familiar

surroundings, was "in custody" for the purposes of interrogation by four police officers when he

was under arrest and not free to leave at the time of questioning).

The Supreme Court has identified two "discrete inquiries [which] are essential to the

determination" of whether a defendant has been taken into custody for *Miranda* purposes. *See*

*Thompson v. Keohane,* 516 U.S. 99, 112  (1995) (holding that custodial determination is a legal

question qualifying it for "mixed question of law and fact" review under 28 U.S.C. § 2254(d)).

First, the reviewing court must look at the objective circumstances surrounding the interrogation.

Second, in light of those circumstances, the reviewing court asks whether "a reasonable person

would have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson*

*v. Keohane*, 516 U.S. at 113 (1995) (footnote omitted); s*ee also United States v. Newton*, 369

F.3d 659, 672 (2d Cir. 2004), *cert. denied*, 125 S. Ct. 371 (2004). If so, then the custody inquiry

is over, and the reviewing court need go no further. *See id.*

However, if a "reasonable person" would not have felt free to leave, then the reviewing

court must proceed to the second step of the custody analysis and determine whether this

"reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Id.* (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). "Only if the answer to this second question is yes was the person 'in custody for practical purposes' and 'entitled to the full panoply of protections prescribed by *Miranda*.' ' *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)); *see also United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir.1992) (noting that "[d]ecisions in this circuit have emphasized that in the absence of actual arrest, an interrogation is not 'custodial' unless the authorities affirmatively convey the message that the defendant is not free to leave").

Congelosi contends that he clearly was in custody because he was "restrained against his will" by having both hands handcuffed to the stretcher and by having Officer Fenton hold his head still. "[T]he bare fact of physical restraint does not itself invoke the *Miranda* protections." *Wilson v. Coon*, 808 F.2d 688, 690 (8th Cir. 1987) (noting that the "Supreme Court has recognized that a restraint on freedom of action does not *ipso facto* create a situation in which *Miranda* warnings are necessary") (citing *Berkemer v. McCarty*, 468 U.S. 420, 436 (1984) (in determining whether a traffic stop amounts to "custody," pertinent question was whether it "exerts upon a detained person pressures that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights"). In *Wilson v. Coon*, the Eighth Circuit was called upon to "decide whether the ambulance attendant's physical restraint [of petitioner] created an inherently coercive environment which required *Miranda* warnings." 808 F.2d at 690. There were three factors present in *Wilson* that convinced the appellate court that petitioner's restraint did not create "an inherently coercive environment." *Id.* First, as was the case in *Berkemer*, a "reasonable person would expect physical detention by

ambulance personnel at an accident site to be 'presumptively temporary and brief.'" *Id.* (quoting *Berkemer*, 468 U.S. at 437.  As the Eighth Circuit noted,

> One would reasonably expect such detention to last only for the time necessary to complete a medical examination for injuries. This time may be a brief field examination at the accident site or, as in Wilson's case, a longer period for examination and observation in a hospital. *The important point, however, is that a reasonable person would expect the detention to last only for the time that is medically necessary and would feel free to leave after then (or before, if the patient competently refused to consent to medical treatment).* This is in contrast to the typical *Miranda* situation, which is prolonged and may continue until the suspect divulges the information sought.

*Id.* (citing *Berkemer*, 468 U.S. at 438) (emphasis supplied). Congelosi states that he did not know that he was being restrained for medical purposes and, based on Congelosi's level of intoxication, this is unsurprising. However, the test is what a *reasonable* person would have believed–not a person with a B.A.C. of nearly 0.30. Congelosi contends that even if there was a medical exception to the custody test, he did not want to receive any medical treatment. However, given the physical state in which Congelosi was described as being, it is questionable whether he could have "competently refused to consent to medical treatment," 808 F.2d at 690. A reasonable person, having just been extricated from his crushed vehicle by the jaws of life, would not refuse medical treatment under those circumstances.

The second factor in *Coon* which militated against a finding of "custody" was that "the detention . . . occurred in public and in view of non-police witnesses, the medical attendants." *Id.* "Public exposure reduces the likelihood that law-enforcement agents will use oppressive or abusive tactics and renders the situation less 'police-dominated.'" *Id.* (quoting *Berkemer*, 468 U.S. at 438-39). The same was true in Congelosi's case–there were emergency medical present at the time.

Third, and most important, according to the court in *Coon*, was that the physical restraint "was applied by ambulance attendants for medical purposes, not by law-enforcement officers for investigative purposes." *Id.* Such was the case here, where the emergency medical personnel were afraid both for their safety and that of Congelosi, and accordingly requested that he placed in restraints so that he would not injure himself or others. Again, a "reasonable person would perceive this detention as imposed only for purposes of a medical examination, not a police interrogation." It is difficult to disagree with the proposition that "[d]etention for a medical examination is not a situation that a reasonable person would find inherently coercive in the sense required by *Miranda*." *Id.* Although, as the Eighth Circuit observed, "[t]here may be facts which transform physical restraint for a routine medical examination at an accident site into an inherently coercive situation," *id.*, it could not find such facts on the present record before it. The fact that Officer Fenton was helping the emergency medical personnel by holding Congelosi's head still did not render the situation inherently coercive so as to warrant a finding that Congelosi was "in custody." *See id.* (state trooper's statement that he "was trying to assist the ambulance personnel" did not imply that detention was "police-dominated, inherently coercive, or tantamount to a formal arrest"). It thus was not an unreasonable application of clearly established Supreme Court precedent for the state courts to conclude that Congelosi was not subject to custodial detention within the meaning of *Miranda*.

Since the warnings are required only in the situation of a custodial interrogation, courts have also addressed the issues of when a person in custody has been "interrogated" for the purposes of *Miranda*. Turning to the "interrogation" aspect of the *Miranda* inquiry, Congelosi contends that he was subjected to an "interrogation" because Officer Fenton should have known

that his comment was likely to lead to an incriminating remark. Although "interrogation" usually takes the form of direct questioning by police authorities, federal courts have recognized situations where interrogation can occur indirectly. In *Rhode Island v. Innis*, 446 U.S. 291 (1980), the Supreme Court held that interrogation requiring the issuance of the *Miranda* warnings occurs whenever an individual is "subjected to either express questioning or its functional equivalent." *Id.* at 300-01. In other words, the term interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301.

In *Innis*, the suspect was arrested for a murder that had been committed with a sawed-off shotgun. Upon his arrest, the suspect requested counsel, thereby invoking his Sixth Amendment rights. While he was being transported in a patrol car with three police officers, one of the officers spoke to the other officers in the car, noting that a school for handicapped children was located near the scene of the murder. The officer remarked, "God forbid one of the children might find a weapon with shells and they might hurt themselves." *Id.* at 294-295. The suspect then interrupted the conversation and told the officers where the murder weapon was located.

Defense counsel for Innis sought to suppress the officers' testimony regarding that statement revealing the location of the gun, arguing that it had been elicited in violation of Innis' Sixth Amendment right to have counsel present during a custodial interrogation. The Supreme Court disagreed, finding that no interrogation had taken place because the officers should not necessarily have known that their conversation was "reasonably likely to elicit an incriminating response." *Id.* at 302. *See also Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (interrogation

includes "words or actions that, given the officer's knowledge of any special susceptibilities of the suspect, the officer know or reasonably should know are likely to have the force of a question on the accused and therefore be reasonably likely to elicit an incriminating response." )

Subsequently, in *Arizona v. Mauro*, 481 U.S. 520, 529 (1987), the Supreme Court stated that "[o]fficers do not interrogate a suspect simply by hoping that he will incriminate himself. *Mauro* reaffirmed the statement made in *Miranda*, and again in *Innis* "Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. . . . Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today."

Here, Officer Fenton first inquired of Congelosi what had happened, and received no direct response. Officer Fenton then stated, "it smells like you've been drinking." In state court and in this habeas proceeding, the state has essentially argued that Officer Fenton's remark was "a spontaneous comment rather than an intentional interrogation." "However, [u]nder *Miranda*, courts have no reason or mandate to consider whether, as the state suggests here, a law enforcement officer's question was not really a question because, objectively considered, it did not call for a response." *Harryman v. Estelle*, 616 F.2d 870, 874 (5th Cir. 1980) (cited in *United States v. Soto*, 953 F.2d 263, 265 (6th Cir. 1992). As the court observed in *Soto*, "Neither absence of intent to interrogate nor exclamation of surprise is determinative of whether interrogation was conducted." To this point, Congelosi offers the concession made by Officer Fenton at trial that

when he made that comment, he was attempting to determine whether Congelosi had been drinking. Added to that is the fact Officer Fenton had unsuccessfully tried to get Congelosi to tell him what had happened just prior to his making the comment about smelling alcohol on Congelosi, who apparently was displaying the physical signs of a bellicose drunk. Under these specific circumstances, I tend to agree with Congelosi that Officer Fenton should have known that his comment was at least "reasonably likely to elicit an incriminating response."

However, even if there was a *Miranda* error committed in Congelosi's case, it was harmless. The only statement at issue was Congelosi's admission that he had "had a couple beers." This piece of evidence was a relatively insignificant part of the prosecution's proof that Congelosi was intoxicated, and voluntarily so:  his B.A.C. result was 0.28-0.29, almost three times the legal limit; various witnesses observed his physical condition and combative, irrational behavior following the accident; he was seen holding a glass object in his hand while driving; and a nearly empty liquor bottle was found in his truck. *See, e.g.*, T.538, 552, 581-82. And, a nurse who treated Congelosi at the hospital testified that he had told her essentially the same thing he had said to Officer Fenton–that he had consumed a "couple of beers" earlier in the day. *See* T.538, 546-47. Congelosi also had told a paramedic at the accident scene that he had been coming from a party before the accident. T.555-56. Thus, the statement which Congelosi sought to preclude was cumulative to other evidence regarding his voluntary intoxication so that its admission could not reasonably have had a detrimental effect on the verdict.

For the foregoing reasons, I recommend dismissing Congelosi's claim challenging the admission of his statement to the police about his consumption of alcohol prior to the accident. Even if there was a *Miranda* violation, the error was harmless in light of the overwhelming

evidence of Congelosi's intoxication.

**B.   Ground Two: The trial court abused its discretion in allowing autopsy photographs of the two deceased victims.**

Congelosi contends that the trial court erred in admitting two autopsy photographs into evidence. He contends that the photographs were not probative of any material issue in the trial, and thus served only to inflame the jury. *See* Amend. Pet. at 15-19 (Docket No. 17). When this claim was raised on direct appeal, the Appellate Division found that petitioner had "waiv[ed] his present contention" of error with regard to one of the photographs, since trial counsel ultimately withdrew his objection to its admission. With regard to the second photograph, the Appellate Division determined that it "was not so inflammatory as to deprive [petitioner] of a fair trial[.]" *People v. Congelosi*,  266 A.D.2d 930, 698 N.Y.S.2d at 812 (citations omitted).

The admissibility of evidence in a state court criminal proceeding is primarily a matter of state law, and federal courts are not to review state court evidentiary rulings to determine whether the state court correctly applied state law. *See Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."). Errors of state law, moreover, are not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*. Thus, to obtain habeas relief based on an alleged evidentiary error, a petitioner must demonstrate that the error was so pervasive as to have undermined the fundamental fairness of his trial and thereby  deprived him of his due process rights under the Fourteenth Amendment. *See United States v. Agurs*, 427 U.S. 97, 108 (1976); *accord Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

Viewing the erroneously admitted evidence objectively in light of the entire record before the jury, the habeas court must ask whether the evidence was sufficiently material to have provided the basis for petitioner's conviction, or to have obviated a reasonable doubt that would have existed on the record without it. *Collins*, 755 F.2d at 19.  In short, the Second Circuit has explained, the allegedly erroneous evidence must have been "crucial, critical, [or] highly significant" to the outcome of the trial before the error relating to its admission can be a basis for habeas relief. *Id.* (quoting *Nettles v. Wainwright*, 677 F.2d 410, 414-15 (5th Cir. 1982)). In other words, the critical question for the habeas court is not whether the trial court properly admitted the photographs but whether their admission denied petitioner a "fundamentally fair" trial.

Under longstanding New York and federal evidentiary law, it is matter of the trial court's discretion as to whether to introduce photographs of homicide victims. *See People v. Wood*, 79 N.Y.2d 958, 582 N.Y.S.2d 992 (N.Y.1992)). ("The general rule is . . . [that] photographs are admissible if they tend 'to prove or disprove a disputed or material issue, to illustrate or elucidate other relevant evidence, or to corroborate or disprove some other evidence offered or to be offered.' They should be excluded 'only if [their] sole purpose is to arouse the emotions of the jury and to prejudice the defendant[.]'") (quoting *People v Pobliner*, 32 N.Y.2d 356, 369-70 (N.Y. 1973) ("[P]hotographs of the deceased are admissible if they tend to prove or disprove a disputed or material issue . . . even though they portray a gruesome spectacle and may tend to arouse passion and resentment against the defendant in the minds of the jury.") (quotation omitted); *see also People v. Williams*, 241 A.D.2d 911, 912, 663 N.Y.S.2d 1023, 1997 N.Y. Slip Op. 06489 (App. Div. 4th Dept. July 3, 1997) ("Contrary to the contention of defendant, the court did not abuse its discretion in admitting into evidence the autopsy photographs of the victims.

-18-

The photographs were 'probative on the issue of depraved indifference to human life, an element of a crime for which he was charged'.") (quotation and citations omitted).

The photographs in issue at Congelosi's trial were two small, black-and-white prints depicting the victims prior to autopsy. Defense counsel objected that one photograph was gruesome and that the other was "incredibly" gruesome. Defense counsel argued that their admission served no evidentiary purpose since the central issue in the case was the mental state and culpability of petitioner, not whether the car crash had actually killed the two victims. In opposition, the prosecutor did not offer an evidentiary purpose for the photographs' admission, but merely noted that he had worse photographs that he was not seeking to admit.

Since the medical examiner's testimony adequately described the injuries incurred by the victims during the car crash and the cause of death, I tend to agree with Congelosi that the photographs of the two victims were cumulative. Moreover, the photographs, in my view, were only marginally relevant, were somewhat prejudicial, and should not have been admitted. However, even if Congelosi is correct that there was an error of state evidentiary law, he was not prejudiced in the constitutional sense by the photographs' introduction into evidence. This is because the two photographs clearly were not the basis for Congelosi's conviction. Stated another way, the photographs did not remove a reasonable doubt that otherwise would have existed in their absence, as the factual recitation in this Report and Recommendation illustrates. There clearly was abundant evidence presented by the prosecution to convict Congelosi of the charges against him, and even if the photographs had been excluded, there is no reasonable probability that the jury would have reached a more favorable verdict. *See Collins*, 755 F.2d at 19; *Taylor*, 708 F.2d at 891. Accordingly, I recommend denying habeas relief because the

-19-

admission of the photographs did not abridge Congelosi's right to a fundamentally fair trial.

    **C.**    **Ground Three: Petitioner's conviction for depraved indifference murder as applied to the facts of this case violated petitioner's constitutional rights to equal protection of the law and substantive due process.**

    **1.**    **Exhaustion and Procedural Default**

Congelosi argues in Ground Three of his amended petition that "the history of the New York Court of Appeals' efforts to interpret the term 'depraved indifference' is both confused and contradictory . . . . [T]here is no principled basis upon which to distinguish depraved indifference murder and reckless manslaughter." Amend. Pet. at 20 (Docket No. 17). According to Congelosi, the result has been unconstitutional variances in the types of charges that prosecutors can lodge and sentences that can be imposed for essentially the same conduct.[5] According to petitioner, the "evisceration of the distinction" between the mental states required for the two crimes "violates both equal protection of laws and substantive due process." *Id.*; *see also id.* at 23 *et seq.* (Docket No. 17). Congelosi urges that given the facts of his case, it would have been more reasonable for the jury to find him guilty of a lesser degree of culpability–such as that supporting a charge of "reckless manslaughter."

Respondent contends that Congelosi failed to exhaust this claim because he did not present the substantial equivalent of such a such claim in federal constitutional terms to the state courts.[6] On direct appeal, Congelosi advanced an argument with the point-heading that the

---

    [5]    Depraved indifference murder carries a minimum punishment of fifteen years in prison. *See* N.Y. Penal Law §§ 70.00(3)(a), (b); *Jones v. Keane*, 329 F.3d 290, 293 (2d Cir. 2003). Reckless manslaughter, on the other hand, can entail a minimum sentence of only one year. *See id.*

    [6]    " With exceptions not relevant here, federal habeas relief is not available unless 'the applicant has exhausted the remedies available in the courts of the State.'" *Jones v. Keane*, 329 F.3d 290, 294 (2d Cir. 2003) (quoting 28 U.S.C. § 2254(b)(1)(A)). In order to exhaust a federal constitutional claim for the purposes of federal habeas review, the substance of the federal claim, both legal and factual, must be apparent from the petitioner's

verdict was against the weight of the evidence and cited C.P.L. § 470.15(5) and *People v. Bleakley*, 69 N.Y.2d 490 (1987) in the opening paragraph.

Much of appellate counsel's ensuing discussion was devoted to arguing that, as a matter of statutory  construction of the relevant laws and looking at the state legislature's intent, a vehicular fatality caused by a motorist who was driving while intoxicated cannot constitute depraved indifference murder. *See* Resp't Ex. C at 33 *et seq*. Appellate counsel noted that under the statutes with which he was charged, the prosecution "did not need to show *any mens rea*," because "[p]roof of voluntary intoxication removes any need to prove awareness of the risk, and depraved indifference is a description of objective circumstances, not a culpable mental state." *Id.* This, appellate counsel reasoned, "is a formula for strict liability murder," but "there is no evidence that the [New York] Legislature intended to create a strict liability murder statute in New York in place of the vehicular and other penal law crimes it did create." Resp't Ex. C at 33-34; *see also id.* at 34-35 ("Intoxication removes the need to show any knowledge of risk, and operation of a motor vehicle while intoxicated and in a way that caused death almost by definition represents an objective circumstance representing depraved indifference to human life. Thus every vehicular manslaughter case becomes depraved indifference murder but for jury nullification of the greater charge, or prosecutorial fear of such nullification."). There was no discussion by him of the alleged statutory infirmity in Constitutional terms.

---

presentation to the state court. *See Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981). The claim presented to the state court, in other words, must be the "substantial equivalent" of the claim raised in the federal habeas petition. *Jones v. Keane*, 329 F.3d at 295 (quoting  *Strogov v. Attorney Gen'l of N.Y.*, 191 F.3d 188, 191 (2d Cir.1999) (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971) (some quotation marks omitted)). The petitioner must complete one full round of appellate review, meaning that the highest state court so empowered must have been presented with the opportunity to consider the petitioner's federal constitutional claim. *See Picard v. Connor*, 404 U.S. at 275-76.

Instead, Congelosi argued in his appellate brief, "[u]nder a DWI depraved indifference murder theory, . . . the prosecution's burden in a DWI fatality is reduced to the equivalent of that in a prosecution for vehicular manslaughter[,]" because the prosecution "need only prove that the defendant was intoxicated, that his operation of a vehicle was consistent with intoxication, and that this operation of a vehicle caused death." Resp't Ex. C at 34. Thus, there was "no meaningful difference between what the [L]egislature . . . designated a 'D' felony and . . . and 'A' felony," which, appellate counsel argued, could not have been the Legislature's intent. Resp't Ex. C at 35.[7]

Respondent contends that Congelosi has failed to exhaust his state court remedies with regard to the unconstitutionality of the depraved indifference murder statute because he did not present it in federal constitutional terms to the state courts. *See* Resp't Mem. at 9-10 (Docket No. 26) (citing, *inter alia*, *Petrucelli v. Coombe*, 735 F.2d 684, 687 (2d Cir. 1984); *Daye v. Attorney Gen'l of N.Y.*, 696 F.2d 186, 190-91 (2d Cir. 1982) (*en banc*), *cert. denied*, 464 U.S. 1048 (1984)). As respondent correctly points out, Congelosi's argument on direct appeal did not explicitly reference either the New York State constitution or the Federal constitution; nor did he invoke notions of due process or equal protection, or cite any Federal cases, or State cases employing a constitutional analysis. *See Daye v. Attorney Gen'l of N.Y.*, 696 F.2d 186, 191 (2d Cir.1982) (*en banc*) (delimiting ways in which a *pro se* habeas petitioner can satisfy the "fair

---

[7]    In the "weight of the evidence" argument presented on direct appeal, appellate counsel argued as follows:

> [T]he difference between vehicular manslaughter and depraved indifference murder is that in [the former] the accused must operate a vehicle while intoxicated [and] unaware of the danger[,] and cause death, while in depraved indifference [murder] the accused must operate a vehicle while intoxicated thereby being unaware of the risk, and the operation of the vehicle must pose a grave risk of death. In other words . . . there is no meaningful difference between what the [New York] legislature has designated a class "D" felony [vehicular manslaughter] and one which the legislature has designated an "A" felony [depraved indifference murder]."

presentment" requirement without citing "chapter and verse" of the Constitution). Congelosi argues that the constitutional claim nevertheless was fairly presented to the state courts because it is closely related to his claim, raised by appellate counsel on direct appeal, that the verdict was against the weight of the evidence. *See* Docket No. 18, Ex. A at 27-30.

In affirming the conviction, the Appellate Division tersely dismissed the so-denominated "weight of the evidence" claim. *See People v. Congelosi*, 266 A.D.2d 930, 698 N.Y.S.2d at 812 ("We also reject defendant's contention that the verdict is against the weight of the evidence."). The Appellate Division's holding gave no indication that it had considered Congelosi's subsidiary arguments concerning the problems inherent in charging depraved indifference in cases of DWI fatalities. Even if Congelosi arguably presented at least the factual premises underpinning his present claim, he did not do so under the rubric of a constitutional "void for vagueness" analysis. Accordingly, I agree with respondent and recommend finding that Congelosi failed to exhaust this claim. *Accord Jones v. Keane*, 329 F.3d at 295 (reversing the District Court order which found that the insufficiency of the evidence claim that [petitioner] presented in state court was the substantial equivalent of the claim of unconstitutional vagueness raised in his federal habeas petition and holding federal claim was not fairly presented to state courts; petitioner's insufficiency claim was based on claim of self defense, and he presented neither factual nor legal premises underpinning claim that statute itself was unconstitutionally vague) (citing *Strogov v. Attorney Gen'l of State of N.Y.*, 191 F.3d 188, 193 (2d Cir. 1999)); *see also Flowers v. Fisher*, No. 03 CV 5405(NG)(VVP), 2006 WL 3050876, at *8 (E.D.N.Y. Oct. 23, 2006).

When "it is clear that the unexhausted claim is procedurally barred by state law and, as

such, its presentation in the state forum would be futile," *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d

Cir. 2001), "[t]he habeas court theoretically has the power to deem the claim exhausted" since

there is an "absence of available State corrective process" under § 2254(b)(1)(B)(i), *id.* (citing

*Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir.1997)). However, the Supreme Court has held that

when "'[a] petitioner [has] failed to exhaust state remedies and the court to which the petitioner

would be required to present his claims in order to meet the exhaustion requirement would now

find the claims procedurally barred,'  federal habeas courts also must deem the claims

procedurally defaulted." *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991)).  To

overcome the procedural bar, Congelosi must show (1) both "cause" for not properly raising the

claim in state court, as well as "prejudice" resulting therefrom; or (2) that a "fundamental

miscarriage of justice" would result if the claim were not addressed. *Coleman*, 501 U.S. at 750;

*accord*, *e.g.*, *Dixon v. Miller*, 293 F.3d 74, 80-81 (2d Cir. 2002). Congelosi has not attempted to

make such a showing, and on the record before me, I can see neither cause and prejudice, nor

any new evidence of factual innocence so as to justify excusing the procedural default.

Accordingly, I recommend dismissing this claim without reaching the merits.

### 2.        Discussion of the Merits

In the alternative, I recommend dismissing the claim on the merits because Congelosi has

failed to show that the affirmance of his conviction for depraved indifference murder was either

an unreasonable application of, or contrary to, clearly established Supreme Court law.

Congelosi essentially is arguing that the definition of "depraved indifference" is now so

vague that it can be applied by prosecutors to any reckless homicide, and that this vagueness

violates both the Equal Protection Clause and the Due Process Clause of the Fourteenth

Amendment.[8]  To adjudicate Congelosi's claim, it will be helpful to first consider New York's

decisional law discussing the distinction between depraved indifference murder and

manslaughter. Under the definition of second degree murder for which Congelosi was convicted,

New York law, "[a] person is guilty . . . when . . . [u]nder circumstances evincing a depraved

indifference to human life, he recklessly engages in conduct which creates a grave risk of death

to another person, and thereby causes the death of another person." N.Y. PENAL LAW §

125.25(2). A defendant is guilty of manslaughter in the second degree when he "recklessly

causes the death of another person." N.Y. PENAL LAW § 125.15(1). For purposes of imposing

criminal liability in New York, a person acts "recklessly" with regard to a particular result or to a

circumstance "when he is aware of and consciously disregards a substantial and unjustifiable risk

that such result will occur or that such circumstance exists." N.Y. PENAL LAW § 15.05(3).  "The

risk must be of such nature and degree that disregard thereof constitutes a gross deviation from

the standard of conduct that a reasonable person would observe in the situation." *Id.*

        Until July 2006, depraved indifference murder was distinguished from both intentional

---

        [8]        Congelosi's argument appears to have been adopted from the case of *St. Helen v. Senkowski*, 02
Civ. 10248(CLB) (Brieant, D.J.), where petitioner argued that New York's depraved indifference murder and
reckless manslaughter statutes have been "so blurred and conflated by recent interpretive decisions of the New York
Court of Appeals with the result that there is no principled basis in which to distinguish the two crimes," and "[t]his
violates the Constitutional rights of persons convicted under the more serious of the two offenses." *St. Helen v.
Senkowski*, No. 02 Civ. 10248, 2003 U.S. Dist. LEXIS 26642, at *10 (S.D.N.Y. Sept. 19, 2003), *rev'd on other
grounds*, 374 F.3d 181 (2d Cir. 2004); *see also Jones v. Keane*, No. 7:02-CV01804-CLB, 2002 WL 33985141, at *5
(S.D.N.Y. May 22, 2002) (Brieant, J.) (granting habeas relief based on conclusion that New York's depraved
indifference murder statute is unconstitutionally vague as applied), *rev'd on other grounds*, 329 F.3d 290 (2d Cir.
2003). The Second Circuit reversed both the *St. Helen* and the *Jones* cases because it found that the claims had not
been properly exhausted and were procedurally barred. *E.g.*, *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir.
2004). Petitioner had raised his vagueness argument for the first time in his application for leave to appeal to the
New York Court of Appeals, but "[p]resenting a claim for the first time to a state court of discretionary review is
insufficient to exhaust the claim unless the court considers it." *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000)
(citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). The void-for-vagueness claims in *St. Helen* and *Jones* were
deemed exhausted because the petitioners faced an absence of corrective process were they to return to state court.
The procedural rule that gave rise to the constructive exhaustion of the claims, however, rendered the claims
defaulted. *See id.*

murder and reckless manslaughter by reference to the New York Court of Appeals' analysis in *People v. Register*, 60 N.Y.2d 270 (N.Y. 1983), *cert. denied*, 466 U.S. 953 (1984). *Register* "held that recklessness, pure and simple, is the *mens rea* for depraved indifference murder." *Register*, 60 N.Y.2d at 277. Thus, "the focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder, but rather upon an objective assessment of the degree of risk presented by defendant's reckless conduct." *Id.* at 277 (internal citations omitted). The *Register* court then explained that the requirement that conduct occur " 'under circumstances evincing a depraved indifference to human life' . . . refers to neither the *mens rea* nor the *actus reus*" but rather to "the factual setting in which the risk creating conduct must occur." *Id.* at 276; *see also People v. Roe*, 74 N.Y.2d 20, 24-25, 544 N.Y.S.2d 297 (N.Y. 1989) (stating that evidence of "the actor's subjective mental state . . . is not pertinent to a determination of . . . whether the objective circumstances bearing on the nature of a defendant's reckless conduct are such that the conduct creates a very substantial risk of death"). Although depraved indifference murder "resembles" reckless manslaughter, the critical difference between the statute, according to the *Register* view, is based upon the different factual circumstances under which each crime is committed. *Register*, 60 N.Y.2d at 276. In other words, "in a depraved mind murder the actor's conduct must present a *grave* risk of death whereas in manslaughter it presents the lesser *substantial* risk of death." *Id.* (emphases supplied). The *Register* majority attributed this distinction to the "inability to quantify homicidal risks in precise terms." *Id.*

The New York Court of Appeals reaffirmed *Register*'s reasoning in 2002 in *People v. Sanchez*, 98 N.Y.2d 373, 748 N.Y.S.2d 312 (N.Y. 2002). Citing *Register* extensively, the *Sanchez* court observed that it is the "defendant's disregard of the risk [which] elevates and

magnifies the degree of recklessness, itself establishing the required circumstances evincing depraved indifference to human life."*Sanchez*, 98 N.Y.2d at 381. Under the *Register* formulation of depraved indifference, whether the prosecution has demonstrated that the objective circumstances elevated the degree of risk to the extent required for a murder conviction "is a qualitative judgment to be made by the trier of the facts." *People v. Roe*, 74 N.Y.2d at 25 (citing *People v. Register*, 60 N.Y.2d at 274-75; *People v. Gomez*, 65 N.Y.2d 9, 12 (N.Y. 1985)). The requirement of "imminently dangerous conduct" that creates a "grave risk of death," *Roe*, 74 N.Y.2d at 24, has been the primary means by which the New York Legislature distinguished depraved indifference murder from reckless manslaughter. *See id.* (citing *Register*, 60 N.Y.2d at 279; *Gomez*, 65 N.Y.2d at 11).

Over the years, several judges have strongly dissented from the *Register* formulation, effectively agreeing with Congelosi that there is no real difference between depraved indifference and reckless manslaughter. For instance, in *Sanchez*, 98 N.Y.2d 373, 406-07 & n. 18, Judge Rosenblatt, in a dissenting opinion, stated that "[t]o the extent that it endorses *Register*, the majority also conflates depraved indifference murder with reckless manslaughter. After today, depraved indifference murder can thus be used as a proxy for not one but two separate crimes." Two other judges from that court–also in dissenting opinions–had criticized the majority's interpretation of depraved indifference murder vis-à-vis reckless manslaughter. *See People v. Roe*, 74 N.Y.2d 20, 29, 544 N.Y.S.2d 297 (1989) (Bellacosa, J., dissenting) ("[T]his result finalizes the obliteration of the classical demarcation between murder and manslaughter in this State."); *People v. Register*, 60 N.Y.2d at 285 (Jasen, J., dissenting) ("While there may be a technical distinction between a 'grave' risk and a 'substantial' one, the only real difference is

about 15 years in prison.").

However, it is important to note that none of the judges who dissented from the *Register* formulation over the years went so far as to invalidate the depraved indifference murder statute on constitutional "vagueness" grounds, as Congelosi frames his argument in his habeas petition. Rather, these judges would have held that "depraved indifference," rather than recklessness, should be construed as a state of mind, and the required *mens rea* for depraved indifference murder.

This was the basis on which the New York Court of Appeals, in 2006, finally overruled *Register* in the case of *People v. Feingold*, 7 N.Y.3d 288, 819 N.Y.S.2d 691 (N.Y. 2006). Recognizing an erosion of the *Register* test beginning in 2003, as cases began restricting the circumstances under which a defendant could be found guilty of depraved indifference murder, the New York Court of Appeals in *Feingold* explicitly overruled *Sanchez* and *Register*, and held that "depraved indifference is a culpable mental state." *Feingold*, 7 N.Y.3d at 294.[9]

I turn next to the issue of whether the depraved indifference murder statute is unconstitutionally vague. As a matter of fundamental due process "'[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'" *Batchelder*, (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939) (alteration in original). The constitution thus requires that a penal law "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender, 461 U.S. at 357 (citing

---

[9]     Congelosi cannot avail himself of this change effected by *Feingold*. The New York Court of Appeals has specifically held that its holdings culminating in the *Feingold* decision are not to be applied retroactively. *Policano v. Herbert*, 7 N.Y.3d 588, 589, 603, 825 N.Y.S.2d 678 (N.Y. 2006).

cases). Where, as here, statute does not implicate First Amendment interests, "the statute is judged on an as-applied basis." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) (citations omitted); *accord United States v. Whittaker*, 999 F.2d 38, 42 (2d Cir.1993). A two-part test is used to determine whether a statute is unconstitutionally vague as applied: "[T]he court must first determine whether the statute 'give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and then consider whether the law 'provide[s] explicit standards for those who apply [it].'" *United States v. Schneiderman*, 968 F.2d 1564, 1568 (2d Cir.1992) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)) (some alterations in original), *cert. denied*, 507 U.S. 921 (1993). In order to sustain a vagueness challenge, the complainant therefore "must prove that the enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n. 7 (1982) (citations and internal quotation marks omitted). It would be difficult to argue seriously that the language of the depraved indifference statute did not put a person of ordinary intelligence on notice that the actions undertaken by Congelosi in this case were "criminal" or "proscribed." Moreover, New York case law at the time the crime was committed had applied the depraved indifference murder statute to conduct similar to that for which petitioner was indicted. *See People v. Padula*, 197 A.D.2d 747, 749, 602 N.Y.S.2d 737, 738 (App. Div. 3d Dept. 1993) ("Here, not only was defendant's speed extremely high (it was estimated by several eyewitnesses and an accident reconstruction expert to be between 70 and 80 miles per hour in an area where the posted limit is 30 miles per hour), but he had also made the deliberate decision to get behind the wheel of a vehicle after becoming

intoxicated and to operate that vehicle with no regard for the rules of the road.") (citing *People v. Gomez*, 65 N.Y.2d at 12 (defendant's excessive rate of speed and failure to brake while proceeding along a busy city street and partially onto its sidewalk, which result in deaths of two bicyclists, were factors found to satisfy the depraved indifference element of the crime; the court referred specifically to defendant's use of his motor vehicle "in a wanton and callous manner"); *People v. Moquin*, 142 A.D.2d 347, 351, 536 N.Y.S.2d 561, 564 (App. Div. 3d Dept. 1988) ("[T]he statutory scheme contains no provision indicating that prosecution for murder in the second degree resulting from the use of a motor vehicle is precluded in all circumstances."; defendant, who had at least two prior alcohol-related offences and who was driving with a blood alcohol content of 0.24%, drove at a speed estimated to be 70 miles per hour; her vehicle moved to the opposite lane of traffic and remained there until the fatal impact with an oncoming car; earlier, she had been observed driving erratically with respect to speed by alternately slowing down and speeding up) (citation omitted); *People v. Shabaz*, 173 A.D.2d 498, 500, 569 N.Y.S.2d 971, 973 (App. Div. 2d Dept. 1991) ("Here, the evidence overwhelmingly supports the jury's conclusion that the defendant acted with depraved indifference to human life when, under the influence of cocaine, he drove at 70 to 100 miles per hour through a narrow aperture between two rows of cars stopped at a red light, despite the peril to the occupants of the cars and to any pedestrians in the roadway."); *People v. Daniels*, 265 A.D.2d 909 (App. Div. 4th Dept.1999) (finding that defendant's conduct, i.e., driving while in an intoxicated condition [blood alcohol content was 0.18%], engaging a State Trooper in a high speed chase [reaching speeds of 110 m.p.h.] through populated areas [during morning rush hour], committing multiple Vehicle and Traffic Law violations [including forcing at least one vehicle off the road], and refusing to stop

despite the entreaties of his passengers, [one of whom was an 11-year-old girl] demonstrates 'a wanton indifference to human life or depravity of mind').

Furthermore, I note that the New York Court of Appeals has consistently rejected vagueness challenges similar to the one raised herein by Congelosi. *See*, *e.g.*, *People v. Poplis*, 30 N.Y.2d 85, 88 (N.Y. 1972) ("The murder definition requires conduct with 'depraved indifference' to 'human life,' plus recklessness. This is conduct of graver culpability, and it is the kind which has been rather well understood at common law to involve something more serious than mere recklessness alone which has had an incidental tragic result."); *People v. Cole*, 85 N.Y.2d 990, 992, 993 (N.Y. 1995) ("[T]he fact that the statute [Penal Law § 125.25(4)][10] encompasses conduct 'which creates a grave risk of serious injury or death' . . . does not render the statute unconstitutionally vague, since the type and level of risks to be avoided by the actor are specifically delineated."); *People v. Johnson*, 87 N.Y.2d 357, 360 (N.Y. 1996) (rejecting a void-for-vagueness challenge to the depraved indifference murder statute, Penal Law section 125.25(2)) (citing *Cole*, 85 N.Y.2d at 992). Furthermore, "the proscription on creating a 'grave' risk of death constitutes, at a minimum, a 'comprehensible normative standard.'" *Mannix v. Phillips*, 390 F. Supp.2d 280, 291 (S.D.N.Y. 2005); *see also Farr v. Greiner*, No. 01 CR 6921(NG)(MDG), 2007 WL 1094160, at *27 (E.D.N.Y. Apr. 10, 2007)) ("[T]he Supreme Court 'has recognized that a scienter requirement may mitigate a law's vagueness, especially with

---

[10]     New York Penal Law section 125.25 has five subsections. Like subsection (2) of § 125.25 (of which Congelosi was convicted), subsection (4) also requires "circumstances evincing a depraved indifference to human life" and "conduct which creates a grave risk." N.Y. Penal Law § 125.25(4) Section 125.25(4) provides, in its entirety, that a person is guilty of murder in the second degree when "[u]nder circumstances evincing a depraved indifference to human life, and being eighteen years old or more the defendant recklessly engages in conduct which creates a grave risk of serious physical injury or death to another person less than eleven years old and thereby causes the death of such person." N.Y. Penal Law § 125.25(4). Section 125.25(2) does not contain an age requirement for the actor and the victim and only applies when the risk created is that of death.

respect to the adequacy of notice . . . that the conduct is proscribed.' . . . [T]he depraved

indifference statute [has a scienter element which] requires that the conduct be reckless such that

the accused 'is aware of and consciously disregards a substantial and unjustifiable risk' in

'creating a grave risk of death.'") (citations and quotations omitted).

Since *People v. Cole* and *People v. Johnson* were decided, the intermediate New York

appellate courts have repeatedly rejected vagueness challenges to the depraved indifference

statute, albeit in a summary fashion. *See People v. Petronio*, 34 A.D.3d 602, 603, 825 N.Y.S.2d

99, 100 (App. Div. 2d Dept. 2006) ("The defendant's argument that the Court of Appeals'

formulation of depraved indifference murder is unconstitutionally vague is unpreserved for

appellate review . . . and, in any event, is without merit." ); *People v. Riddick*, 34 A.D.3d 923,

925, 823 N.Y.S.2d 594, 596 (App. Div. 3d Dept. 2006) ( "[W]e find no merit to defendant's

present claim that the depraved indifference murder statute is unconstitutionally vague because

no rational jury could logically distinguish between it and manslaughter in the second degree.");

*People v. Brown*, 23 A.D.3d 1090, 1092, 804 N.Y.S.2d 209, 210 (App. Div. 4th Dept. 2005)

("[C]ontrary to defendant's contention, the depraved indifference murder statute is not

unconstitutionally vague."); *People v. Reyes*, 4 A.D.3d 541, 541, 771 N.Y.S.2d 706, 707 (App.

Div. 2d Dept. 2004) ("The defendant's contention that Penal Law § 125.25(2) is

unconstitutionally vague was not preserved for appellate review. In any event, the contention is

without merit.") (citation omitted); *People v. Joyner*, 303 A.D.2d 421, 421, 755 N.Y.S.2d 866,

867 (App. Div. 2d Dept. 2003) ("The defendant's contention that Penal Law § 125.25(2) is

unconstitutionally vague is without merit.") (citations omitted); *People v. Mannix*, 302 A.D.2d

297, 297, 756 N.Y.S.2d 33, 34 (App. Div. 1st Dept. 2003) ("Contrary to defendant's contention,

Penal Law § 125.25(2), which defines 'depraved indifference' murder, is not unconstitutionally vague.").

In addition, as the district court noted in *Mannix v. Phillips*, 390 F. Supp.2d at 291, even *Jones v. Keane*, one of the two cases arising out of the Southern District that found constitutional infirmities in the statutory scheme at issue, "concurs that 'the concept of depraved indifference to human life is well understood, and is essentially self-defining notwithstanding the confusing glosses placed on the statute by *Register* and its progeny.'" 390 F. Supp.2d at 291 (quoting *Jones*, 2002 U.S. Dist. LEXIS 27418, at *12 and citing *St. Helen*, 2003 U.S. Dist. LEXIS 26642, at *8 (stating that the term "depraved indifference to human life" "may well be sufficient to give adequate warning to a non-lawyer member of the public as to what conduct is rendered unlawful by the statute"). For these reasons, I recommend finding that the depraved indifference statute meets the "adequate notice" prong of the vagueness test. *Accord*, *e.g.*, *Mannix*, 390 F. Supp.2d at 291.

The second prong of the vagueness analysis requires the court to determine whether the statute provides sufficient guidance to law enforcement personnel such as police officers, prosecutors, and juries who must enforce and apply the law. *See Kolender*, 461 U.S. at 358. However, "some ambiguity in a statute's meaning is constitutionally tolerable." *United States v. Chestaro*, 197 F.3d 600, 605 (2d Cir. 1999). "'Effective law enforcement often requires the exercise of some degree . . . of prosecutorial judgment but this alone does not render a statute unconstitutional.'" *Farr v. Greiner*, 2007 WL 1094160, at *28 (quoting *United States v. Nadi*, 996 F.2d 548, 552 (2d Cir.1993)). As the district court pointed out in *Mannix v. Phillips*, courts have routinely rejected vagueness challenges to statutory language that is not capable of precise

application but rather calls for an exercise in judgment in the interpretation of the statutory language. 390 F. Supp.2d at 292 (citing *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78-79 (1994) ("lascivious"); *Parker v. Levy*, 417 U.S. 733, 752-58 (1974) ("conduct unbecoming an officer"); *United States v. Monroe*, 178 F.3d 304, 308-09 (5th Cir.1999) ("maliciously"), *cert. denied*, 528 U.S. 1010 (1999); *United States v. Ashman*, 979 F.2d 469, 487 (7th Cir.1992) ("pattern of racketeering activity"), *cert. denied*, 510 U.S. 814 (1993); *Sharkey's, Inc. v. City of Waukesha*, 265 F. Supp.2d 984, 992-94 (E.D. Wis.2003) ("unreasonably"); *United States v. Mitlof*, 165 F. Supp.2d 558, 561-62 (S.D.N.Y. 2001) ("fraud, neglect, connivance, misconduct, or violation of law"); *United States v. Fitzgerald*, 676 F. Supp. 949, 952 (N.D. Cal.1987) ("serious bodily injury")). As the foregoing cases illustrate, courts have permitted quite a range of words and phrases capable of varying meanings to pass constitutional muster on the "arbitrary" prong of the vagueness test. The discretion granted to the prosecutors, police, and jurors here is no greater than in other criminal statutes that have been upheld despite vagueness challenges. *Accord*, *e.g.*, *Farr v. Greiner*, 2007 WL 1094160, at *28; *Mannix v. Phillips*, 390 F. Supp.2d at 292 (citations omitted).

The phrase "circumstances evincing a depraved indifference to human life" admittedly may be a relatively broad concept. However, in *Register,* the operative case at the time of Congelosi's conviction, the court limited its scope to "an objective assessment of the degree of risk presented by defendant's reckless conduct." *Farr v. Greiner*, 2007 WL 1094160, at *26 (quoting *Register*, 60 N.Y.2d at 277 and citing *Roe*, 74 N.Y.2d at 25). Federal courts reviewing statutory language for vagueness have found that the presence of "[o]bjective criteria in a statute "minimize the possibility of arbitrary enforcement." *Id.* (citing *Poster 'N' Things*, 511 U.S. at

526). More than a "speculative danger of arbitrary enforcement," *Village of Hoffman Estates*, 455 U.S. at 503, is required, and Congelosi has not made such a showing with regard to the depraved indifference statute.

However, the main point of Congelosi's argument is not that the depraved indifference murder statute, considered in isolation, is unconstitutionally vague. Rather, Congelosi is asserting that to the extent that the depraved indifference murder and reckless manslaughter statutes can be construed as covering the same conduct, their mere co-existence gives rise to the constitutional infirmity. *Accord, e.g.*, *Mannix v. Phillips*, 390 F. Supp.2d 280, 292 (S.D.N.Y. 2005) ("Mannix's main argument, however, is not that the depraved indifference statute standing by itself is unconstitutionally vague. Rather, it is that the difference between it and the manslaughter statute is either indiscernible or non-existent and that the congruence between the two statutes renders his conviction constitutionally infirm. Indeed, this is the argument on which the district court in *Jones* and *St. Helen* granted habeas relief.").

Even assuming for the sake of argument that Congelosi is correct that there is no distinction at all between the conduct covered by the depraved indifference murder statute and the conduct covered by the manslaughter statute, there is no clearly established federal constitutional principle prohibiting this. *Mannix v. Phillips*, 390 F. Supp.2d at 292 (noting that the Supreme Court "ha[d] spoken directly on the sort of [vagueness] challenge mounted by Mannix here" in *Batchelder*, 442 U.S. at 116-17). At issue in *Batchelder* were two overlapping provisions of the Omnibus Crime Control and Safe Streets Act of 1968, both of which prohibited convicted felons from receiving firearms. However, each provision authorized different maximum penalties. The Seventh Circuit had vacated the sentence of a felon convicted under the

-35-

section of the Omnibus Act that authorized a longer sentence precisely because there existed a different statute that criminalized identical conduct but that mandated a lesser sentence. *Batchelder*, 442 U.S. at 116-17.

In resolving the statutory question, the Seventh Circuit majority expressed "serious doubts about the constitutionality of two statutes that provide different penalties for identical conduct.'" *Id.* (quotation omitted). Specifically, the Seventh Circuit suggested that the statutes might (1) be void for vagueness, (2) implicate "due process and equal protection interest[s] in avoiding excessive prosecutorial discretion and in obtaining equal justice," and (3) constitute an impermissible delegation of congressional authority. *Id.* (quotation omitted). The Supreme Court in *Batchelder* roundly rejected all three concerns, the first and second of which appear to be pertinent to Congelosi's claim in this proceeding.

First, with regard to the potential for unfettered prosecutorial discretion occasioned by the overlapping statutes, the Supreme Court noted that it "ha[d] long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants. *Id.* (citing, *inter alia*, *United States v. Beacon Brass Co.*, 344 U.S. 43, 45-46 (1952)). That a prosecutor "may be influenced by the penalties available upon conviction" does not "standing alone . . . give rise to a violation of the Equal Protection or Due Process Clause." *Id.* (citing *Rosenberg v. United States*, 346 U.S. at 294 (Clark, J., concurring); *Oyler v. Boles*, 368 U.S. at 456). The Supreme Court explained that "[j]ust as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced." 442 U.S. at 116-17 (citing, *inter alia*, U.S. CONST.,

-36-

Art. II, §§ 2, 3; *United States v. Nixon*, 418 U.S. at 694). Prosecutorial discretion is subject to constraints imposed by the equal protection clause, which prohibits selective enforcement "'based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" As was the case in *Batchelder*, Congelosi has not argued that the prosecution's choice to prosecute him for the deaths of two of the accident victims under the depraved indifference statute was based upon some impermissible factor such as race, religion, or another arbitrary classification.

Turning next to void-for-vagueness concern, the Supreme Court noted in *Batchelder* A criminal statute therefore is impermissibly vague if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *Id.* (quoting *United States v. Harriss*, 347 U.S. 612, 617 (1954)); *see also Kolender v. Lawson*, 461 U.S. 352, 357 (1983) (The United States Constitution  requires that a penal law "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.") (citations omitted).

In *Batchelder*, the statutory provisions at issue "unambiguously specif[ied] the activity proscribed and the penalties available upon conviction." It was of no moment that the particular conduct might violate both statutes, since such a result did "not detract from the notice afforded by each." *Id*. Although, the Supreme Court found, "the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments." *Id.*  Thus, "[s]o long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied." *Id.*

Thus, *Batchelder* makes clear that where two separate statutes cover identical conduct, there is no constitutional infirmity in giving the prosecution discretion to choose which of the two statutes it wishes to use as a basis for a charge against a defendant, "so long as it does not discriminate against any class of defendants." *Id.* at 123-24; *accord Mannix v. Phillips* (citing *Pike v. Santucci*, No. CV-86-3832, 1987 WL 6397, at *2-*3 (E.D.N.Y. Jan. 29, 1987) (denying on habeas review a challenge to New York's coercion statute which required proof of same elements for coercion in the first degree as coercion in the second degree but provided for different sentences)); *United States v. Edmonson*, 792 F.2d 1492, 1497 (9th Cir.1986) ("When, as here, conduct violates more than one criminal statute the government may generally elect which statute it wishes to charge.") (citations omitted).

There is no evidence whatsoever that the prosecution's decision to prosecute Congelosi for the deaths of Carrie Ann and Brandon under the depraved indifference statute arose from some impermissible basis such as race, religion, or some other arbitrary classification. He has not shown that there was a constitutional violation in either his indictment, prosecution, or conviction under the depraved indifference murder statute.

Finally, I note that all but one of the district courts in this Circuit to have considered the depraved indifference murder statute's constitutionality have found habeas relief unwarranted. *See Farr v. Greiner*, 2007 WL 1094160, at *29 ("Even if petitioner were correct that there is no discernible distinction between depraved indifference murder and the lesser included offense of reckless manslaughter, there is no constitutional violation entitling him to habeas relief."); *Rustici v. Phillips*, 497 F. Supp.2d 452, 481 (E.D.N.Y. 2007); *Guzman v. Greene*, 425 F. Supp.2d 298, 320 (E.D.N.Y.2006) ("Guzman's claim based on his counsel's failure to argue that

the depraved indifference statute was unconstitutionally vague is similarly without merit. Courts have repeatedly upheld the constitutionality of the statute."); *Mannix v. Phillips*, 390 F. Supp.2d at 292 (holding that New York's deliberate indifference murder statute is not unconstitutionally vague standing alone or in relation to the reckless manslaughter statute).[11]

Even if Congelosi "were correct that there is no discernible distinction between depraved indifference murder and the lesser included offense of reckless manslaughter, there is no constitutional violation entitling him to habeas relief." *Farr v. Greiner*, 2007 WL 1094160, at *26 (citing *Mannix*, 390 F. Supp.2d at 292-93; *Salcedo v. Phillips*, No. 04 Civ.7964 PAC GWG, 2005 WL 2211318, at *31 n. 9 (S.D.N.Y. Sept. 13, 2005); *Boyce v. Commissioner*, 217 F. Supp.2d 108, 117-19 (D. Me. 2002) (discussing distinction between Maine's depraved indifference murder statute and manslaughter)). Even where two separate statutes cover identical conduct, there is no constitutional prohibition against the prosecution exercising its discretion to choose which statute to charge and prosecute, provided that it does not engage in selective

---

[11]     The only district court in this Circuit to have found a constitutional vagueness problem is Judge Brieant of the Southern District.  In *Jones v. Keane*, 2002 WL 33985141, at *5 (S.D.N.Y. 2002), Judge Brieant recounted the line of cases from the Court of Appeals rejecting vagueness challenges, including *People v. Cole* which "held that the language was not unconstitutionally vague, because conduct with depraved indifference to human life is well understood." *Id.* Judge Brieant agreed that the concept of depraved indifference to human life was "well understood," and " essentially self-defining notwithstanding the confusing glosses placed on the state by *Register* and its progeny." However, he found, a "clear denial of equal protection" results when "two different statutes are construed by New York's highest Court to reach the same conduct, or indistinguishable conduct, and one carries a far lesser penalty, allowing a grand jury to choose to indict for either one . . . ." *See Jones v. Keane*,  2002 WL 33985141, at *5 ( "A rational jury could not be expected to differentiate between a 'grave risk of death' and a 'substantial risk of death,' as required by the New York Court of Appeals. This is a distinction without a difference."). *See also St. Helen v. Senkowski*, No. 02 Civ. 10248, at 17-18, ("The Supreme Court learning clearly reflects that the Equal Protection and Due Process Clauses of the Fourteenth Amendment prevent two penal statutes from reaching indistinguishable conduct, where one statute carries a far lesser penalty than the other.").
            Two months after *Jones* was decided in May 2002, Judge Rosenblatt of the New York Court of Appeals authored a dissenting opinion in agreement with Judge Brieant and citing *Jones* in a footnote. Although persuasive, Judge Brieant's and Judge Rosenblatt's arguments conflict with *Batchelder*, which was not cited in either *Jones v. Keane* or *St. Helen v. Senkowski. See Mannix v. Phillips,* 390 F. Supp.2d at 293 n.2. Accordingly, this Court must respectfully decline to follow them. *See id.*

enforcement. *See Batchelder*, 442 U.S. at 123-25; *accord Mannix v. Phillips*, 390 F. Supp.2d at 292-93; *Farr v. Greiner*, 2007 WL 1094160, at *26; *Salcedo v. Phillips*, 2005 WL 2211318, at *31 n. 9. This Court, in keeping with weight of the federal and state cases that have previously addressed the question, recommends holding that New York's depraved indifference murder statute is not unconstitutionally vague and does not allow unlimited or arbitrary discretion in its application. *See Rustici*, 497 F. Supp.2d at 481; *Farr*, 2007 WL 1094160, at 21-24; *Guzman*, 425 F. Supp.2d at 313; *Mannix*, 390 F. Supp.2d at 292; *Johnson*, 87 N.Y.2d at 361; *Cole*, 85 N.Y.2d at 992. Accordingly, should the district court reach the merits of Congelosi's claim regarding the constitutionality of New York's depraved indifference statute, I recommend denying it.

> **D.    Grounds Four, Five, Seven, Eight, Nine and Ten: Petitioner was deprived of his Sixth Amendment Right to the Effective Assistance of Trial and Appellate Counsel.**

> **1.    Overview of Trial Counsel Claims**

Congelosi challenges the following aspects of his trial counsel's performance: (1) failure to move to suppress the results of the blood alcohol ("B.A.C.") test; (2) failure to introduce expert testimony regarding petitioner's history of alcoholism; and (3) failure to object to an allegedly erroneous jury charge and jury verdict form. The first two claims were raised in Congelosi's post-judgment motions pursuant to C.P.L. §§ 440.10 and 440.20, and denied by the trial court. *See* Docket No. 18, Ex. H, at 18, 25, 29; Docket No. 19, Ex. K. Respondent concedes that they have been properly exhausted. However, the third claim was only raised in support of Congelosi's application for a writ of error *coram nobis*. *See* Docket No. 32, Ex. X.  Respondent argues that it was not raised in the proper forum and therefore has not been properly exhausted.

> **a.    The claim regarding trial counsel's  failure to object to jury**

**instructions and the jury verdict form should be deemed
exhausted but procedurally defaulted.**

Because a *coram nobis* application is not the appropriate procedural vehicle for asserting a claim of ineffective assistance of trial counsel, I agree with respondent that the claim pertaining to trial counsel's alleged omissions with regard to the jury instructions and verdict sheet has not been properly exhausted.  Raising ineffective assistance of trial counsel claims in a *coram nobis* petition does not properly raise or exhaust those claims because the *coram nobis* addresses appellate errors, not trial errors; thus ineffective assistance of trial counsel claims are not properly raised there and are not exhausted by such a motion. *See Turner v. Artuz,* 262 F .3d 118, 123 (2d Cir. 2001) (stating that the only constitutional claim petitioner was permitted to raise in seeking a writ of error *coram nobis* was ineffective assistance of appellate counsel; the constitutional deprivations forming the predicates for the claim of ineffectiveness are distinct from ineffective assistance claim; therefore, the constitutional issues that appellate attorney supposedly should have argued were not fairly presented to state court in *coram nobis* application); *Otero v. Stinson*, 51 F. Supp.2d 415, 419 (S.D.N.Y. 1999); *Smith v. Artus*, 03 Civ. 9819, 2005 WL 1661104, at *13 (S.D.N.Y. July 14, 2005) (finding that ineffective assistance of trial counsel claim was unexhausted where petitioner filed *coram nobis* petition alleging ineffective appellate counsel for failing to raise ineffective trial counsel claims since "*coram nobis* is not the appropriate vehicle for" raising ineffective trial counsel claims in New York state courts).

"For exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir.1997) (quotations omitted). "In such a case, a

petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991). Consequently, such procedurally barred claims are "deemed exhausted" by the federal courts. *E.g.*, *Grey*, 933 F.2d at 120-21; *Reyes v. Keane*, 118 F.3d at 139. It is clear that Congelosi is now barred from raising his argument concerning trial counsel's failure to object to certain jury instructions and the verdict form in state court because such a claim was apparent on the trial record and could have been raised on direct appeal.[12]  To avoid a procedural default on this unexhausted ineffective assistance of trial counsel claim, Congelosi would have to "show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claims will result in a 'fundamental miscarriage of justice,' " i.e., a showing of "actual innocence." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted); *accord*, *e.g.*, *Schlup v. Delo*, 513 U.S. 298, 324-27 (1995). Congelosi has not alleged cause and prejudice nor has he made a showing of actual innocence. Thus, the third claim of ineffective assistance of trial counsel claim should be dismissed as procedurally barred from habeas review.

> **b.**    **The exhausted claims of ineffective assistance of trial counsel lack merit.**

Congelosi's remaining two claims regarding trial counsel's alleged derelictions, although exhausted, are without merit and also should be dismissed. The standard for judging claims of ineffective assistance is the now-familiar two-pronged test set forth in *Strickland*:

---

[12]    C.P.L. § 440.10(2)(c) states, in pertinent part, as follows: "Notwithstanding the provisions of subdivision one, the court must deny a motion to vacate a judgment when: . . . . (c) Although sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to . . . raise such ground or issue upon an appeal actually perfected by him . . . ." N.Y. CRIM. PROC. LAW § 440.10(2)(c).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown is the adversary process . . . .

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

### 1.)     Failure to move to suppress blood-test results

The first error the Congelosi attributes to trial counsel is the failure to move to suppress

the results of the B.A.C. tests performed on the night of his arrest pursuant to Vehicle and Traffic

Law ("V.T.L.") § 1194(2). *See* Docket No. 17 at 40-44 (Ground Four). When Congelosi asserted

this claim in connection with his C.P.L. § 440.10 motion, the trial court rejected it as follows:

> [D]efendant consented to the drawing of blood prior to his arrest. Consequently, the provisions of [V.T.L.] § 1194(2)[13] do not apply. . . . The failure to move to suppress the results of his blood tests on those grounds was not ineffective assistance of counsel.

County Court Order (Docket No. 19, Ex. O) (citing *People v. Atkins*, 85 N.Y.2d 1007 (N.Y.

1995) ("[T]he two-hour limitation contained in Vehicle and Traffic Law § 1194(2)(a) has no

application here where, as found by Appellate Term, defendant expressly and voluntarily

consented to administration of the blood test."); *see also* People's Affirmation (Docket No. 19,

Ex. K). Quite plainly, Congelosi cannot demonstrate that he was prejudiced by trial counsel's

---

[13]     V.T.L. § 1194(2)(a) provides that all motorists who operate vehicles on the roads of New York state are "deemed to have given consent" to the administration of a chemical test to determine blood alcohol level. N.Y. Veh. & Traf. Law § 1194(2). The "deemed consent" section of V.T.L. § 1194(2)(a) limits the time period in which to administer the BAC test to two hours from arrest or from a preliminary breath test. N.Y. Veh. & Traf. Law § 1194(2)(a)(1), (2).

failure to make a motion pursuant to V.T.L. § 1194(2). Indeed, there is essentially no question that the suppression motion would have been denied, since the judge who would have ruled on it explicitly found the proffered argument to be without merit. Congelosi therefore has not, and cannot, demonstrate even a possibility that the outcome of his trial would have been different had trial counsel made the motion at issue. His failure to demonstrate prejudice precludes him from succeeding on this claim. *See Strickland*, 466 U.S. at 697. Therefore, I recommend dismissing this claim.

### 2.)   Failure to present a defense of chronic alcoholism

Congelosi also faults trial counsel for deciding not to introduce evidence regarding his long-standing alcoholism at trial as a defense to the charges against him. According to Congelosi, he is an alcoholic who chronically and pathologically consumes alcohol to excess, and lacks any ability whatever to control his drinking. *See*, *e.g.*, Amend. Pet. at 47 (Docket No. 17). Congelosi contends that he wanted to testify about his alcoholism, but trial counsel informed him that such a defense had "no hope of winning." *Id.* at 47-48 (citing A [sic] Exhibit H at 13-14, 25-29). Congelosi argues that if the jury had heard evidence of his chronic alcoholism, it would not have been able to find that he "was aware of and consciously disregarded a substantial and unjustifiable risk that his conduct would create a grave risk of death to another . . . ." Amend. Pet. at 50 (Docket No. 17) (citing the language of the depraved indifference murder statute). The trial court considered this claim in connection with petitioner's C.P.L. § 440.10 motion and rejected it as "without merit." *See* Docket No. 19, Ex. K. As discussed below, I agree with trial counsel's reasonable strategic decision to forego such a defense.

In New York at the time of Congelosi's trial and direct appeal, a conviction for depraved

indifference homicide had to be supported by evidence that "[u]nder circumstances evincing a depraved indifference to human life [defendant] recklessly engage[d] in conduct which create[d] a grave risk of death to another person, and thereby cause[d] the death of another person." N.Y. PENAL LAW § 125.25(2); *see also Solomon v. Commissioner of Corr. Servs.*, 786 F. Supp. 218, 224 (E.D.N.Y. 1992) ("Thus, to establish petitioner's guilt [of depraved indifference murder], the prosecution was required to prove that petitioner's act presented a very high risk of death to [his victim], and that it was committed under circumstances which evinced a callous or wanton indifference to human life or a depravity of mind.") (citing, *inter alia*, *People v. Gomez*, 65 N.Y.2d at 12 (referring specifically to the use of a motor vehicle "in a wanton and callous manner", and observing that "[t]he focus of the depraved mind murder statute is to allow a trier of fact to discern depravity of mind from the circumstances under which an object or instrumentality is used"); *People v. Register*, 60 N.Y.2d at 279 (the depraved indifference element of depraved indifference murder focuses not on the subjective state of mind of the defendant, but, rather, on an objective assessment of the degree of risk presented by defendant's reckless conduct; thus, ,depraved indifference murder is distinguishable from reckless manslaughter by the degree of risk presented by defendant's conduct); *accord People v. Sanchez*, 98 N.Y.2d at 379-80 (Depraved indifference murder, which requires both a reckless state of mind and attendant circumstances evincing a depraved indifference to human life, entails a much greater level of risk than reckless manslaughter, which requires only a reckless state of mind without more.).

In New York, voluntary intoxication is not a defense to a criminal charge; however, in crimes that have specific intent as an essential element, voluntary intoxication has been found to

negative such intent, thereby rendering the defendant not guilty of the crime charged. *E.g.*, *People v. Westergard*, 113 A.D.2d 640, 497 N.Y.S.2d 65 (App. Div. 2d Dept. 1985). The "intoxication defense" has been codified in New York and provides: "Intoxication is not, as such, a defense to a criminal charge; but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negative an element of the crime charged." N.Y. Penal Law § 15.25.

Although "intoxication may negative the *mens rea* in a crime requiring specific intent, it may not negative the lower culpable mental state required in crimes of recklessness[.]" *People v. Tocco*, 138 Misc.2d 510, 513, 525 N.Y.S.2d 137, 140 (N.Y. Sup. Ct. 1988) (citing N.Y. Penal Law § 15.05(3)). At the time of Congelosi's conviction, "[t]he sole required *mens rea* for both depraved mind murder and reckless manslaughter [wa]s recklessness." *Solomon v. Commissioner of Corr. Servs.*, 786 F. Supp. at 224 (citing *People v. Register*, 60 N.Y.2d 270. *See also People v. Sanchez*, 98 N.Y.2d at 379-80 (The crux of depraved indifference murder "is recklessness exaggerated by indifference to the circumstances objectively demonstrating the enormity of the risk of death from the defendant's conduct."). An offence cannot logically be committed both recklessly and intentionally, and thus, depraved indifference murder cannot also have a specific intent *mens rea*. Therefore, voluntary intoxication would not have been an available "defense" to the charges again Congelosi, which were not specific intent crimes. Counsel reasonably chose not to pursue a defense theory which found no support in the case law at the time of Congelosi's trial.

Although Congelosi concedes that Penal Law's definition of "reckless" removes the element of "awareness" in cases of "voluntary intoxication," he states that it only does so if

based *solely* on voluntary intoxication. According to Congelosi, however, that this is something that the jury was "highly unlikely to find had they been educated on 'Alcoholism.'" *Id.* (citation to exhibit omitted). He claims, in other words, that his alcoholism meant that his alcohol consumption on the night in question was essentially involuntary. However, "involuntary" is recognized in this context as being caused by something external to the criminal actor, such as when the person is under duress. There simply is no reasonable probability that the outcome of his trial would have been different even had trial counsel attempted to introduce expert evidence of Congelosi's chronic alcoholism. Under the law as it presently stands, the jury would not have been permitted to consider it as relevant to any of the elements of the crimes with which Congelosi was charged. Because Congelosi has demonstrated neither that trial counsel made an unreasonable choice not to introduce evidence regarding petitioner's alcoholism nor that such decision prejudiced his defense, this claim should be dismissed.

**2.      Ineffective Assistance of Appellate Counsel Claims (Grounds Eight, Nine and Ten)**

Congelosi contends that his appellate counsel was constitutionally deficient in failing to argue (1) that the defense was not provided with notice of, and the opportunity to respond to, the jury's request during deliberations to have certain evidence sent into the jury room; (2) that a courtroom deputy's alleged unsupervised contact with jurors violated his right to be present himself and to have a trial judge present at all material stages of his trial; and (3) that various jury charges and the verdict form were erroneous. *See* Amend Pet. at 61-71 ( Docket No. 17).The Appellate Division summarily rejected his *coram nobis* challenging appellate counsel's performance based on the failure to present these issues on direct appeal.

On habeas review, the *Strickland* test for judge claims of trial counsel's ineffectiveness

also applies to claims of ineffective assistance of appellate counsel. *Mayo v. Henderson*, 13 F.3d

528 (2d Cir. 1994); *Claudio v. Scully*, 982 F.2d 798 (2d Cir. 1992), *cert. denied*, 508 U.S. 912

(1993). A petitioner alleging ineffective assistance of appellate counsel must prove both that

appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal,

and that absent counsel's deficient performance, there was a reasonable probability that

defendant's appeal would have been successful. *Mayo,* 13 F.3d at 533-34; *Smith v. Robbins*, 528

U.S. 259, 285 (2000); *Aparicio v. Artuz,* 269 F.3d at 95. A habeas petitioner may establish

constitutionally deficient assistance if he shows that his appellate counsel "omitted significant

and obvious issues while pursuing issues that were clearly and significantly weaker." *Clark v.

Stinson*, 214 F.3d 315, 322 (2d Cir. 2000). However, "[t]he failure to include a meritless

argument does not fall outside the wide range of professionally competent assistance to which

[a][p]etitioner [i]s entitled." *Aparicio*, 269 F.3d at 99 (internal quotation marks and citations

omitted).   As discussed below, none of the issues that Congelosi faults appellate counsel for

omitting were "significant and obvious issues," *Mayo*, 13 F.3d at 533, that were overlooked in

favor of less meritorious ones. To the contrary, the issues raised by appellate counsel were

potentially meritorious and well-argued.

### a.     Failure to argue that lack of proper notice to the defense of jury request for evidence

With regard to alleged failure of the trial court to give the defense the notice of the jury's

request for certain evidence,[14] it is apparent that the jury note requested nothing more than trial

---

[14]     *See People v. Martell*, 91 N.Y.2d 782, 785 (N.Y. 1998) ("[A]bsent defendant's consent, it is error
for the court to supply a jury with any written material containing statutory elements or terms of the charged
offenses, and that such error cannot be considered harmless." *See also* N.Y. Crim. Proc. Law § 310.30 ("At any time
during its deliberation, the jury may request the court for further instruction or information with respect to the law,
with respect to the content or substance of any trial evidence, or with respect to any other matter pertinent to the

exhibits that had been admitted as proof. The jurors did not request any substantive information

regarding the law or reiteration of the trial judge's charge, so as to implicate the notice

procedures in play under New York state law. *See People v. Kirk*, 27 A.D.3d 383, 384 (App.

Div. 2006) ("A note from the deliberating jury unambiguously requested nothing more than trial

exhibits in evidence. Therefore, when the court ordered those exhibits delivered to the jury, in

accordance with the parties' prior agreement (*see* [N.Y. Crim. Proc. Law §] 310.20(1)),[15] it did

not violate defendant's right to be present[.]"); *People v. O'Rama*, 78 N.Y.2d 270, 274-82 (N.Y.

1991). Thus, the trial court did not err in directing that the requested trial exhibits be delivered to

the jury in accordance with the agreement made by the prosecutor and defense counsel before the

jury retired to deliberate. As there was no violation of Congelosi's right to be present, *see People

v. Damiano*, 87 N.Y.2d 477, 487 (N.Y. 1996), appellate counsel quite reasonably choose not to

press this meritless claim on direct appeal.

### b. Failure to assert unsupervised contact between courtroom deputy and jury

The trial record does not substantiate Congelosi's claim that a courtroom deputy had

unauthorized, unsupervised contact with the jury. Essentially, Congelosi contends that it was

improper for the courtroom deputy to deliver the requested trial exhibits to the jury

unsupervised, after the trial judge had approved the request. This claim is without any factual or

legal basis in the record. Appellate counsel arguably would have been remiss for including such

---

jury's consideration of the case. Upon such a request, the court must direct that the jury be returned to the courtroom and, after notice to both the people and counsel for the defendant, and in the presence of the defendant, must give such requested information or instruction as the court deems proper . . . .").

[15]     "Upon retiring to deliberate, the jurors may take with them . . . 1. Any exhibits received in evidence at the trial which the court, after according the parties an opportunity to be heard upon the matter, in its discretion permits them to take . . . ." N.Y. Crim. Proc. Law § 310.20(1);

a frivolous claim in his appellate brief.

        **c.**    **Failure to argue the constructive amendment of indictment based on trial judge's error in reading elements of depraved indifference murder**

Ground Eight alleges that the trial court denied Congelosi his due process rights when it altered the elements of depraved indifference murder when issuing the jury instructions on the law. *See* Amend. Pet. at 66-68 (Docket No. 17). Congelosi points out that at one point during the charges, the trial court erroneously indicated that conduct "causing serious physical injury" was an element of depraved indifference murder. *See* T.857.[16]  However, the applicable statute provides that a person is guilty of depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby *causes the death of another person*." N.Y. Penal law § 125.25(2) (emphasis supplied). Congelosi argues that the variance between the statutory definition of depraved indifference murder and the language of the above-quoted portion of the trial court's charge impermissibly amended the indictment and gave the jury license to convict him of murder while utilizing the "serious physical injury" element that

---

[16]    The challenged portion of the jury instruction reads as follows:

In order for you to find the Defendant guilty of the crime of depraved murder . . . the People are required to prove to your satisfaction beyond a reasonable doubt each of the following three elements.
One, that on or about March 4, 1996, in Monroe County, the Defendant engaged in conduct which created a grave risk of death to another person by operating a motor vehicle at a rate of speed above the posted limits and in an unsafe manner by weaving along public streets . . . and crossing the centerline . . . while under the influence of alcohol, and striking a . . . vehicle containing passenger Miller, *thereby causing serious physical injury* to Miller.

T.855-57 (emphasis supplied).

defines the less serious crime of first degree assault.

As a matter of both New York state and Federal law, improperly instructing a jury on an element of an offense is an error that is subject to harmless error analysis. *See Neder v. United States*, 527 U.S. 1, 9 (1999); *People v. Hawkins*, 69 A.D.2d 823, 823, 415 N.Y.S.2d 47, 48 (App. Div. 2d Dept. 1979); *see also California v. Roy*, 519 U.S. 2, 5 (1996) (*per curiam*) ("The specific error at issue here–an error in the instruction that defined the crime–is as easily characterized as a 'misdescription of an element' of the crime, as it is characterized as an error of 'omission.'"). Although the trial court did mis-communicate the "result" element of depraved indifference murder in one iteration of its charge to the jury regarding the statutory definition, the remainder of the charge did not contain any other such error. Specifically, the trial court correctly stated the "result" element of depraved indifference murder (i.e., that it must conduct causing "death") at least seven other times during its instructions to the jury. *See* T. 841-42, 844, 848, 855, 856. And, it is uncontroverted that the two victims died as a result of the criminal conduct for which Congelosi was indicted and tried.

Where, as here, the omitted element was uncontested and was supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the reviewing court will properly find the mis-instruction to have been harmless. *See*, *e.g.*, *Neder v. United States*, 527 U.S. at 16; *People v. Franklin*, 288 A.D.2d 751, 755, 733 N.Y.S.2d 283, 287 (App. Div. 3d Dept. 2001) ("The record evidence amply supports the existence of probable cause for defendant's arrest on that charge and, therefore, the key element of resisting arrest, an "authorized arrest", was satisfied. Accordingly, the jury was not required to rely upon the invalidated warrant as a basis for defendant's arrest. Under the circumstances, we find the

[erroneous] reinstruction to be nonconstitutional harmless error since there was no significant probability that the jury would have acquitted defendant on the charge of resisting arrest in light of the overwhelming evidence of his guilt[.]") (citations omitted). Had appellate counsel included this claim on direct appeal, there is no reasonable likelihood that the Appellate Division would have been persuaded to reverse Congelosi's conviction. Accordingly, Congelosi was not prejudiced by appellate counsel's omission of this claim.

> **d.      Failure to argue that various other jury instructions and the jury verdict form were erroneous**

Congelosi claims that appellate counsel was deficient because he "failed to raise any issue regarding the erroneous jury charges including the erroneous verdict form." Resp't Ex. X, *Coram Nobis* Application at 18. Congelosi then details alleged errors occurring throughout the trial, from the judge's preliminary instructions to the jury to the final charges on the law. *See id.* at 19 *et seq*. This claim lacks merit for several reasons. First, Congelosi's appellate attorney could not have raised these claims on direct appeal because they were unpreserved for appellate review. Congelosi concedes that "defense counsel's failure to object to the erroneous jury charges according to [C.P.L. §] 470.05, pretty much precluded any review by [the *coram nobis* court] . . . ." *Id.* at 18. As Congelosi points out, "[u]nder New York law, a defendant must object to an alleged error in a jury instruction before the trial court in order to preserve the issue for appeal." *Reyes v. Keane*, 118 F.3d at 138 (citing N.Y. Crim. Proc. Law § 470.05(2)); *see also People v. Cadorette*, 56 N.Y.2d 1007, 1009 (N.Y.1982) ("[D]efendant's other contention regarding alleged errors in the trial court's charge to the jury has not been preserved for our review insofar as no exception to the charge was taken at trial."). There appears to be no dispute

that trial counsel did not register timely objections to any of the allegedly infirm jury instructions and jury verdict sheet, rendering the claims unpreserved for appellate review.  Because it would have been futile for appellate counsel to have raised unpreserved claims before the Appellate Division on direct appeal, counsel reasonably chose to forego those arguments in favor of the stronger ones he did raise. *See Lugo v. Kuhlmann*, 68 F. Supp.2d 347, 373 (S.D.N.Y. 1999) (holding that failure of habeas petitioner's appellate counsel to raise unpreserved claim regarding propriety of jury instruction on direct appeal was not ineffective assistance of counsel).

Furthermore, a review of Congelosi's *coram nobis* brief reveals the picayune nature of the claimed errors. Appellate counsel cannot be considered constitutionally deficient for failing to make meritless arguments on appeal. *See Aparicio*, 269 F.3d at 99.  Lacking also is any indication of prejudice since there is no reasonable possibility that the Appellate Division would have found in petitioner's favor had these insignificant and meritless claims been brought. Accordingly, I recommend that this claim be denied.

      **E.**      **Ground Six: The trial court erroneously refused to accept petitioner's waiver of his right to be present at the *voir dire* sidebars of individual jurors.**

As his sixth ground for habeas relief, Congelosi argues that the trial court committed constitutional error by refusing to accept his waiver of his right under *People v. Antommarchi*, 80 N.Y.2d 247 (N.Y. 1992), to be present at individual sidebar conferences with prospective jurors during *voir dire*. *See* Amend. Pet. at 57-61 (Docket No. 17). When this claim was raised on direct appeal, the Appellate Division agreed with the prosecution's interpretation of the trial record finding that the trial judge's "summary refusal to allow defendant to waive his *Antommarchi* rights . . . does not constitute reversible error because the record establishes that

there were no sidebar discussions with prospective jurors." *People v. Congelosi*, 698 N.Y.S.2d at 811.

This claim involves only a matter of New York state law and is not cognizable in this federal habeas proceeding. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a). A criminal defendant has the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 819 n. 15 (1975); *accord Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). This right includes the right to be present generally for the impaneling of the jury and the pre-screening of potential jurors. *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002); *Tankleff v. Senkowski*, 135 F.3d 235, 246 (2d Cir. 1998). The right, however, is not absolute, and it is an open question whether it encompasses the right to be present at voir dire side bar conferences. *See Sanchez v. Duncan*, 282 F.3d 78, 83 fn. 4 (2d Cir. 2002) (declining to decide whether there is a "clearly established" federal right to be present at voir dire side bar conferences); *see also Zaire v. Mitchell*, No. 93 Civ. 6626(JG), 1996 WL 82391, at *3 (S.D.N.Y. 1996) ("There is not now, and there never has been, a right guaranteed under the Federal Constitution that a State or Federal defendant be present at a sidebar *voir dire* of a prospective juror.") (citing, *inter alia*, *United States v. Ruggiero*, 928 F.2d 1289, 1301 (2d Cir.), *cert. denied*, 502 U.S. 938 (1991) ("[D]ecisions as to when to question jurors and the manner of that inquiry are generally left to the trial judge's broad discretion.") (citations omitted)); *accord Michaels v. Portuondo*, No. 99-CV-3195(JG), 2002 WL 173 2813, at *11 (E.D.N.Y. July 23, 2002).

New York state law, on the other hand, specifically affords criminal defendants the right to be present at sidebar conferences during *voir dire*. *See People v. Antommarchi*, 80 N.Y.2d at

250. This right "is not rooted in the [Federal] Constitution," but in New York Criminal

Procedure Law § 260.20. *People v. Vargas*, 88 N.Y.2d 363, 375 (N.Y. 1996).[17]  Since the so-

called *Antommarchi* right to be present is purely a creature of New York state law, it necessarily

follows that any issue regarding Congelosi's attempt to waive that right is also a matter of state

law. Thus, even if there were error, it would not provide a basis for habeas relief. Congelosi's

waiver claim accordingly should be dismissed as not cognizable on federal habeas review.

###   F.   Ground Eleven: Petitioner's sentence violated Eighth Amendment's proscription against cruel and unusual punishment.

_____Congelosi's final claim contends that the length of his prison sentence constitutes cruel

and unusual punishment under the Eighth Amendment. *See* Amend Pet. at 71-74 (Docket No.

17).  Congelosi states that he "never intended to hurt anyone" and the "act constituting his

depraved indifference was one that was beyond his control, stemming from his lifelong disease

of alcoholism." Congelosi argues that it is unconstitutional to place him on the same level of

culpability as one who intentionally caused the death of another. *See id.* at 71-72 (Docket No.

17).

Congelosi was convicted by a jury of two counts of Murder in the Second Degree

(depraved indifference murder), two counts of Assault in the First Degree, one count of Assault

in the Third Degree, two counts of Driving While Intoxicated, and one count of Aggravated

---

[17]     The New York Court of Appeals held in *Antommarchi* that a defendant has a fundamental right to be present during sidebars at which prospective jurors are questioned about their ability to weigh evidence objectively and hear testimony impartially. 80 N.Y.2d at 247. *Antommarchi* thus expanded the meaning of Criminal Procedure Law § 260.20, which requires a defendant to be present "during the trial of an indictment." The right to be present during sidebar questioning of prospective jurors on matters of bias or prejudice may be waived by a voluntary, knowing, or intelligent choice.  *People v. Janvier*, 92 N.Y.2d 993, 996 (N.Y.1998).  Thus, as a matter of New York state law, it is an abuse of discretion for a trial court to summarily refuse to permit a defendant to exercise his right to waive his presence at individual conferences with jurors.  *See id.*

Unlicensed Operation of a Motor Vehicle in the First Degree.  S.18-19.[18] The trial court set all of these sentences to run concurrently, committing Congelosi to an aggregate prison term of sixteen years to life.  S.18-19.

To the extent that Congelosi is challenging his sentence as harsh and excessive, such a claim does not present a cognizable federal question where the sentence imposed is within statutory limits. *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.") (citing *Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989). The most serious offense of which petitioner was convicted was depraved indifference murder, a class B felony. Under the Penal Law, the mandatory minimum in his case[19] was a term of fifteen years to life, and the maximum sentence was a term of 25 years to life.  Congelosi received a sentence that was only one year longer than the mandatory minimum, making his term of imprisonment well within the range prescribed by state law, and indeed at the low end of the permissible range. Consequently, Congelosi's challenged to the term of his sentence does not present a cognizable federal question.

Furthermore, The Eighth Amendment only forbids the imposition of extreme sentences which are "grossly disproportionate" to the crime of conviction. *Lockyer v. Andrade*, 538 U.S. 63, 72-73 (2003). In *Lockyer v. Andrade*, the defendant was a repeat offender whose most recent offense was stealing about $150-worth of videotapes. Under California's recidivist sentencing scheme, he was sentenced to two consecutive terms of 25 years to life in prison. Explaining that

---

[18]     Citations to "S.__" refer to the transcript of the sentencing hearing.

[19]     Congelosi was not adjudicated as a predicate felony offender and New York Penal Law's enhanced sentencing provisions are not applicable in his case.

"[t]he  gross disproportionality principle reserves a constitutional violation for only the

extraordinary case," the Supreme Court held that in applying that principle for purposes of 28

U.S.C. § 2254(d)(1), it was not an "unreasonable application of . . . clearly established law" for

the California court of appeals to find that the challenged sentence was not "cruel and unusual."

*See also Harmelin v. Michigan*, 501 U.S. 957, 995 (1991) (holding that life in prison without the

possibility of parole for recidivist convicted of cocaine possession did not violate Eighth

Amendment); *Ewing v. California*, 538 U.S. 11 (2003) (twenty-five years to life for grand theft).

Based on the Supreme Court's precedent concerning the Constitution's prohibition against "cruel

and unusual" punishment, Congelosi's sentence clearly does not run afoul of the Eighth

Amendment. I accordingly recommend that this claim be denied.

## V.      Conclusion

For the reasons set forth above, the Court recommends that the petition for a writ of

habeas corpus filed by petitioner Brian Congelosi be denied. Furthermore, the Court finds that

petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to

28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has

made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New*

*York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). Therefore, the Court recommends

that no certificate of appealability should issue with respect to any of petitioner's claims.

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: June 26, 2008
          Rochester, New York.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The District Court ordinarily will refuse to consider on *de novo* review arguments, case law and evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. *See*, *e.g.*, *Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to petitioner and respondent.

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

Dated:  June <u>26</u>, 2008.
         Rochester, New York